IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK D. DEHAINAUT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:10-cv-899 |
| v | ) |
| | ) |
| CALIFORNIA UNIVERSITY OF PENNSYLVANIA and ,THE PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER OF COURT

Pending before the Court is Plaintiff's MOTION FOR STAY OF ORDER PENDING APPEAL, Doc. No. 38, with brief in support, Doc. No. 39, Defendants' response in opposition, Doc. No. 41, and Plaintiff's reply brief, Doc. No. 42. Plaintiff is seeking a stay of the July 21, 2011 Order of Court filed in the above captioned action on the basis that he has appealed this Court's grant of Defendants' Motion to Enforce Settlement. *See* Memorandum Opinion and Order at Doc. No. 36. In granting that motion, the Court found that at the conclusion of the mediation session that occurred on March 4, 2011 before Kenneth Benson, Esquire, the parties had reached a settlement agreement, the essential terms of which were reduced to writing in a handwritten document signed by the parties and their respective attorneys. *See* Doc. No. 36. The written document, entitled "Memo of Agreement", stated the following:

                                       MEMO OF AGREEMENT            3/4/2011

    (1)    BACK WAGES SINCE 9/2007 – DIFFERENCE BETWEEN THEN STEP IN GRADE AND STEP IN GRADE OF FULL PROFESSOR – PAYMENT MADE IN LUMP SUM TO DEHAINAUT AT NEXT AVAILABLE PAY PERIOD FOLLOWING EFFECTIVE DATE OF AGREEMENT – LUMP SUM SUBJECT TO APPROPRIATE DEDUCTIONS – SUBSEQUENT PAY

WILL BE AT STEP IN GRADE AS IF PROMOTED TO FULL PROFESSOR IN 9/2007.

(2) CALIFORNIA AGREES TO COOPERATE WITH DEHAINAUT APPLICATION FOR DISABILITY RETIREMENT.

(3) PARTIES AGREE TO EXECUTE FULL RELEASE AND SETTLEMENT AGREEMENT.

(4) DEHAINAUT AGREES TO FULL RELEASE INCLUDING ANY OUTSTANDING GRIEVANCES.

(5) DEHAINAUT WILL NOT APPLY FOR SUMMER COURSE AND ACCEPTS HIS EMPLOYMENT WILL TERMINATE EFFECTIVE THE FINAL PAYROLL PAYMENT FOR THE 2010-2011 ACADEMIC YEAR.

(6) CALIFORNIA AGREES TO PAY 100% OF MEDIATION FEE.

*See* Doc. No. 36; *see also* Doc. No. 32 at exhib. 1. On August 11, 2011, Plaintiff filed his notice of appeal as to the order which granted the motion to enforce the settlement. Doc. No. 37. On that same day, Plaintiff moved for the stay now pending. The motion is ripe for disposition.

"[T]he power to stay any proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir.1967) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). A stay is an extraordinary measure, *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir.1994), and calls for a court to exercise judgment and weigh competing interests. *Texaco*, 383 F.2d at 608.

In terms of determining whether to grant stay pending an appeal, different Rules of Procedure govern the power of district courts and courts of appeals to do so. *See* Fed.Rule Civ.Proc. 62(c); Fed.Rule App.Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see also*, 11 C. Wright & A. Miller, Federal Practice and Procedure § 2904 (1973). Since these traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a single set of rules. *Id*. Plaintiff has moved, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure for a stay of this Court's July 21, 2011 Order that granted Defendant's motion to enforce the settlement agreement. As such, the Court will consider Plaintiff's motion in view of the above described *Hilton* factors.

The Court begins with a consideration of whether Plaintiff has made a strong showing that he is likely to succeed on the merits. Although these are the same factors the Court considers in deciding whether to grant a preliminary injunction, an applicant seeking a stay has, relatively speaking, more difficulty establishing the first factor, likelihood of success on the merits, due to the difference in procedural posture. "...[A] party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991). As such, "the [applicant] is always required to demonstrate more than the mere 'possibility' of success on the merits." *Id.* In other words, "...even if an [applicant] demonstrates irreparable harm that decidedly outweighs any potential harm to the [adverse party] if a stay is granted, he is still required to show, at a minimum, serious questions going to the merits." *Id.* (internal quotations omitted). Because the burden of meeting this standard is a heavy one for the moving party, more commonly stay requests will not meet this standard and will be denied. 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2904, pp. 503-505 (1995).

Plaintiff has argued that he must only show some likelihood of success on the merits. Doc. No. 39. "Some likelihood" is not the standard. Rather, as noted above, Plaintiff must make a strong showing that he is likely to succeed on the merits, and must, at a minimum, demonstrate the existence of "serious questions going to the merits." He does not. Instead, Plaintiff essentially challenges the factual findings of the Court by advancing several of the same arguments that he did in his opposition to Defendant's motion to enforce the settlement agreement, such as contending that he did not "knowingly and intelligently" release his claims, and arguing that the post-mediation conduct of the parties supports the notion that no agreement had been reached. *Compare* Doc. No. 33, Plaintiff's brief in opposition to the motion to enforce, at § II, with Doc. No. 39, Plaintiff's motion to stay. Plaintiff also contends that his dissatisfaction of the monetary amount derived from application of the formula used to determine his lump sum payment demonstrated uncertainty within the negotiations, and that the overall process remained "in flux" following the mediation session. Doc. No. 39 at p. 9. Although the parties had disparate estimates regarding the potential amount of the lump sum payment cited in paragraph one (1) of the Memo of Agreement, they clearly agreed to the formula by which the amount of the lump sum payment was to be determined. There is no "flux" in the formula. These contentions were previously given due consideration by the Court in the ruling upon the motion to enforce the settlement agreement, and present no serious questions as to the merits. As such, the Court finds that this factor weighs against the granting of the stay.

In terms of the second factor, the Court considers whether Plaintiff will be irreparably injured in the absence of the stay. Plaintiff argues that "[w]ithout a stay of the order, Dr. Dehainaut will be without income and medical benefits and with no recourse either through the judicial process or union grievance procedures should his disability pension application be

4

rejected." Doc. No. 39. Plaintiff's point is well taken. While the Court does not consider Plaintiff's likelihood of success on his appeal to be strong, it cannot, at the same time, completely foreclose the possibility of such success. In the event that the stay is not granted, and further in the event that Plaintiff does succeed on his appeal, an irreparable incongruence would be manifest between Plaintiff's compliance with the Court's Order enforcing the terms of the agreement (including his resignation and subsequent application for disability retirement), and Plaintiff's ability to continue to proceed with his civil action seeking, *inter alia*, accommodation so that he can continue to teach at the University. The Court agrees with Plaintiff that the practical effect of his compliance with the terms of the settlement at this point would be essentially irreversible in terms of being reconciled with any success he may obtain with his appeal, and would further defeat the purpose of continuing his civil action if given the chance. As such, this factor weighs heavily in favor of a stay.

The Court considers whether a stay would substantially harm Defendants. Plaintiff contends that maintaining the status quo would be of no harm to the Defendants. Doc. No. 39. On the other hand, Defendants argue to the contrary:

> … the Settlement Agreement, *inter alia*, called for Plaintiff to be promoted to Full Professor retroactive to "9/2007" and to terminate his employment "EFFECTIVE THE FINAL PAYROLL PAYMENT FOR THE 2010-2011 ACADEMIC YEAR." It appears that the 2010-2011 Academic Year will end August 26, 2011. Thus, time was of the essence in executing the full release and settlement agreement under the terms agreed to by the parties in the settlement reached in this matter on March 4, 2011. It is becoming more critical by the day.
>
> Initially, the Defendants are denied the benefit of their bargain. Moreover, the grant of a stay has the potential effect of sabotaging the agreement altogether … Further, the Defendants are responsible for planning and budgeting for the courses Plaintiff has been assigned to teach. Uncertainty with respect to whether or not he will remain – and at what position and salary – have a greater impact beyond Plaintiff's own situation. [footnote omitted] Decisions would have to be made regarding reassignment of courses and whether additional instructors would have to be hired; all with some impact on the overall operations of Plaintiff's department and the University itself.

Doc. No. 41 at p. 8.  Throughout the settlement process, it has been the apparent position of Defendants that the University could not continue with the uncertain status of Plaintiff because his position as a professor entails duties and responsibilities that required more of him than that which his physical limitation(s) permitted.[1]  Faced with this dilemma, Defendants apparently considered terminating Plaintiff's employment, and indicated same during the course of the mediation session.  *See* Doc. No. 36.  While granting the stay would appear to prolong the uncertainty that Defendants sought to alleviate through the settlement, and that such uncertainty is not without a burden to the University, such harm does not strike the Court as so substantial to weigh against the stay request, particularly in light of the potential irreparable harm which Plaintiff may encounter.  Essentially, granting the stay would relegate the parties to their respective positions at the time of the mediation.  In view of the fact that there is somewhat of a burden to Defendants, albeit not substantial, the Court considers this third factor to not be strongly against a stay.

In terms of the final consideration, that of the public interest, the Court once again notes the strong judicial policy in favor of the voluntary settlement of lawsuits.  *See* Doc. No. 36 (referencing *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d. Cir.1982) (holding that voluntary settlement agreements are "specifically enforceable and broadly interpreted")).  "Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."

---

[1] Plaintiff's ability to perform his duties as an associate professor had been effected by his various medical conditions, including a stroke suffered in April, 2008.  Prior to suffering the stroke, Plaintiff previously taught both online courses and on-campus courses at the University.  *See* Doc. No. 10, Amended Complaint, at ¶ 17.  Following the stroke, Plaintiff requested to teach two courses on-line in the spring semester of 2009 from the University, a request that was refused.  *Id.* at ¶¶ 20 – 21.  Plaintiff "was required to take a medical sabbatical" as a result of the University's refusal to grant his request, and lost income as a result.  *Id.* at ¶25 – 26.  Plaintiff subsequently requested to teach three on-line courses during the Fall 2009 semester, a request that was granted "at first".  *Id.* at ¶¶ 27 – 28.  "Suddenly and unexpectedly in June 2009, two of the three courses [set aside for Plaintiff to teach in the Fall] were moved from online to on-campus status", which precluded Plaintiff from being able to teach them.  *Id.* at ¶ 29.

*D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir.1997). As expressed by a sister court within this Circuit:

> The [United States Court of Appeals for the] Third Circuit recognizes a strong public policy favoring settlements of disputes, the finality of judgments and the termination of litigation. *See American Iron & Steel Institute v. Environmental Protection Agency*, 560 F.2d 589 (3d Cir.1977); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir.1982) ... "Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should." *Pennwalt*, 676 F.2d at 80....

*In re Nazi Era Cases Against German Defendants Litig.*, 236 F.R.D. 231, 241-42 (D.N.J.2006) (numerous additional citations omitted); *see also Standard Steel, LLC v. Buckeye Energy, Inc.*, 2005 WL 2403636 *2 (W.D.Pa.2005) (Conti, J.) (citing *D.R. by M.R.,* 109 F.3d at 901). The Court is concerned that granting Plaintiff's motion for a stay would be counter to this public interest by essentially dismantling those portions of the settlement agreement that were conditioned upon specific actions by dates certain within an agreed upon timeline, such as the retroactive promotion to full professor for the period from September of 2007 to August of 2011, and Plaintiff's agreement to retire at the end of the 2010-2011 academic year. On the other hand, however, the appeal is directly focused on the efficacy of the settlement agreement itself; i.e. did the parties agree to a settlement at the mediation on March 4, 2011. Plaintiff should not be precluded from his right to have an appellate determination of this issue, and denial of a stay may have that direct effect.

In conclusion, the Court is mindful of the fact that its Order granting the motion to enforce the settlement was itself equitable in nature. With that backdrop, the Court obviously now considers the respective positions with regard to Plaintiff's motion to stay. In sum, factors weigh both in favor of and against Plaintiff's motion. However, the Court cannot help but afford significant weight to the potentially irreparable harm which Plaintiff may face when compared

with the other factors. Simply stated, the prospect of irreparable harm and the public interest which favor the granting of a stay outweigh the other factors.

As such, and for the reasons hereinabove set forth, PLAINTIFF'S MOTION FOR STAY OF ORDER PENDING APPEAL, Doc. No. 38, is **GRANTED**; and this Court's Order of July 21, 2011, Doc. No. 36, that granted Defendants' MOTION TO ENFORCE SETTLEMENT, is hereby **STAYED** pending the appeal to the United States Court of Appeals for the Third Circuit.

So ordered, this 29th day of August, 2011.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Edward J. Feinstein, Esquire
Email: efeinstein@stemberfeinstein.com
Janice M. Pintar, Esquire
Email: jpintar@stemberfeinstein.com

Scott A. Bradley, Esquire
Email: sbradley@attorneygeneral.gov